Douglas P. Cushing, OSB #700320
Jordan Schrader Ramis PC
Two Centerpointe Drive, 6th Floor
Lake Oswego OR  97035
Telephone:  (503) 598-7070
Facsimile:   (503) 598-7373
E-mail: doug.cushing@jordanschrader.com
Attorneys for Debtor

Joseph M. VanLeuven, OSB No. 824189
joevanleuven@dwt.com
DAVIS WRIGHT TREMAINE LLP
1300 SW Fifth Ave, Ste 2300
Portland, OR  97201-5630
Telephone (503) 778-5325
Facsimile  (503) 778-5299
Attorneys for Ziegler Healthcare Fund I, L.P. and Ziegler Healthcare Fund III, LLC

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>FARMINGTON CENTER SALEM, an Oregon Limited Partnership, dba FARMINGTON SQUARE SALEM,<br><br>                Debtors. | Case No. 09-60095-fra11<br><br>**JOINT PLAN OF REORGANIZATION OR LIQUIDATION FILED BY DEBTOR AND ZIEGLER**<br>**(Dated July 30, 2009)** |

## ARTICLE I
## INTRODUCTION

Farmington Center Salem, an Oregon Limited Partnership ("Debtor") and Ziegler

Healthcare Fund I, L.P. and Ziegler Healthcare Fund III, LLC (together, "Ziegler"), propose

the following Joint Plan of Reorganization or Liquidation ("Plan") pursuant to the provisions

of Chapter 11 of the Bankruptcy Code.  Generally, the Plan provides for payment of claims

by one of two alternative means:  first, if the Debtor is able to close the "New Loan" defined

below, most claims will be paid in full from the New Loan proceeds.  Second, if the Debtor

does not close the New Loan by the "Closing Deadline" defined below, Debtor's Facility will

be sold at auction and creditors will be paid in the order described below to the extent of net sale proceeds.

## ARTICLE II
## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

2.1 **Definitions.** In addition to such other terms as are defined in other sections of this Plan, the capitalized terms below have the following meanings as used in the Plan:

**"Administrative Expense Claim"** means an Allowed Claim against the Debtor entitled to priority in accordance with Section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code including without limitation (a) the actual and necessary costs and expenses incurred after the Filing Date of preserving the Debtor's estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial, advisory and accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the estate under 28 U.S.C. § 1930.

**"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**"Allowed Claim"** means a Claim, proof of which has been properly filed, or, if no Proof of Claim was so filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or contingent, and, in either case, a Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so filed, to the extent the Claim is allowed by a Final Order.

**"Auction"** shall mean an auction conducted in accordance with the plan if the New Loan does not close by the Closing Deadline.

**"Bankruptcy Code"** means Title 11 of the United States Code, as now in effect for this Chapter 11 Case or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Oregon.

**"Bankruptcy Rules"** means, collectively (a) the Federal Rules of Bankruptcy Procedure and (b) the local Bankruptcy Rules of the United States Bankruptcy Court for the District of Oregon, as now in effect or hereafter amended.

**"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**"Cash"** means legal tender, cash equivalents and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks having a maturity date of no longer than ninety (90) days.

**"Causes of Action"**  means claims, choses in action and rights of recovery of the Debtor that (i) do not relate to the Sale Assets, (ii) relate to transactions occurring in connection with the business of the Debtor prior to the Effective Date, other than accounts receivable generated by or on behalf of the Debtor, (iii) arise under Chapter 5 of the Bankruptcy Code or (iv) are against any partners, directors, officers and or employees of the Debtor relating to actions or failures to act any time on or prior to the Effective Date.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Chapter 11 Case"** means the Debtor's case for reorganization under Chapter 11 of the Bankruptcy Code, Case No. 09-60095-fra11 filed in the United States Bankruptcy Court for the District of Oregon.

**"Claimant"** means the holder of a Claim.

**"Class"** means each of the classifications of Claims or Interests described in Article V of this Plan.

**"Closing"** means closing and funding of the New Loan.

**"Closing Deadline"** means the earliest of (a) the 31st day after the Confirmation Order becomes a final order; (b) October 1, 2009; provided, that Ziegler may agree to extend the Closing Deadline to a date not later than October 30, 2009.

**"Confirmation"** means entry of the Confirmation Order

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing to be conducted by the Court to consider confirmation of the Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

**"Court"** means the United States District Court for the District of Oregon having jurisdiction over this Chapter 11 case and, to the extent of any reference made pursuant to 28 USC § 157, the United States Bankruptcy Court for the District of Oregon, and any court having competent jurisdiction to hear appeals therefrom.

**"Creditor"** means a holder of a Claim.

**"Cure"** means the distribution of Cash, or such other property as may be agreed upon by the parties, with respect to the assumption of an executory contract or unexpired lease under section 365(b) of the Bankruptcy Code, in an amount equal to all accrued, due and unpaid monetary obligations, without interest, as of the Effective Date, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

**"Debtor-in-Possession"** means the Debtor when acting in the capacity of representative of the estate in the Debtor's Chapter 11 Case.

"**Debtor**" means Farmington Center Salem.

"**Disallowed Claim**" means, with respect to a particular Disputed Claim, the amount, if any, by which the Face Amount of such Creditor's Disputed Claim exceeds the Allowed Amount of such Claim.

"**Disclosure Statement**" means the Disclosure Statement (and all exhibits and schedules annexed thereto or referred to therein) that relates to the Plan and that is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

"**Disputed Claim**" means a Claim which has been scheduled by the Debtor or as to which a proof of Claim has been filed, or deemed filed under applicable law, as to which an objection has been or may be timely filed and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled, or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

"**Distribution Date**" means any Business Day on or after the Effective Date on or by which Distributions of Cash are to be made from the Distribution Fund pursuant to the Plan.

"**Distribution Fund**" **means** the fund of Cash to be established and administered by the Plan Administrator pursuant to Article VII of the Plan.

"**Distributions**" means payments to holder of Allowed Claims of Cash or property pursuant to and required by this Plan.

"**Effective Date**" shall the meaning ascribed to such term in Article IX of the Plan.

"**Estate**" means the estate created in the Debtor's Chapter 11 Case by Section 541 of the Bankruptcy Code.

"**Excelsior Claim**" means the Claim listed in the Schedules in favor of Excelsior Development Company, LLC and which is purportedly secured by a deed of trust on the Property.

"**Excluded Assets**" **means** assets of the Debtor that are not Sale Assets.

"**Face Amount**" means with respect to any Claim,

(a)     if the holder of such Claim has not timely filed proof thereof with the Bankruptcy Court, the amount, if any, of such Claim listed in the Schedules;

(b)     if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, the amount stated in such proof; or

(c)     if an Allowed Amount has been established or determined, the amount of such Creditor's Allowed Claim.

"**Facility**" **means** the assisted living and memory care facility operated on the Property.

"**Filing Date**" means January 14, 2009, the date that the Debtor commenced this Chapter 11 Case.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, which has not been reversed, stayed, modified or amended, and to which (i) the time to appeal or file a petition for certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) if an appeal has been filed, no stay has been obtained; or (c) any appeal that has been or may be taken

or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

**"General Unsecured Claims"** means an Unsecured Claim that was not held by an Insider at any time prior to the Effective Date.

**"Insider"** shall have the same meaning as contained in Section 101(31) of the Bankruptcy Code.

**"Insider Unsecured Claim"** means an Unsecured Claim that is held by an Insider or was held by an Insider at any time prior to the Effective Date.

**"Interest"** shall mean a partnership interest in the limited partnership which is the Debtor in this Chapter 11 Case.

**"Interest Holder"** means the holder of an Interest.

**"Interim Operator"** means the person or entity designated by Ziegler, subject to approval by the Bankruptcy Court at the Confirmation Hearing, to perform the duties set forth in this Plan as being performed by the Interim Operator.  Ziegler proposes that Aidan Health Services, Inc. serve as the Interim Operator.

**"Key Equipment"** means Key Equipment Finance, Inc.

**"Key Equipment Claim"** means the Claim held by Key Equipment arising under a vehicle lease, proof of which was filed by Key Equipment Finance, Inc in the Face Amount of $19,783.48 and designated as Claim # 12 on the Claims Register maintained by the Bankruptcy Court for the Chapter 11 Case.

**"Key Equipment Collateral"** means the 2001 Chevrolet C3500 Bus leased by the Debtor from Key Equipment.

**"Lien"** means with respect to an asset or interest of the Debtor, any mortgage, lien, pledge, charge, encumbrance or other security interest of any kind affecting such asset.

**"New Loan"** means a new loan or loans/equity contributions obtained by the Reorganized Debtor in an amount sufficient to enable Debtor to pay all Allowed Administrative Expense Claims and all Allowed Claims in Classes 1 – 4 in full.

**"Plan"** means this Plan of Liquidation and all exhibits and schedules annexed hereto, or referred to herein, as the same may be amended, modified and supplemented.

**"Plan Administrator"** means Peter McKittrick, or such other person designated by Ziegler (subject to approval by the Bankruptcy Court at the Confirmation Hearing) to perform the duties set forth in this Plan as being performed by the Plan Administrator.

**"Priority Claim"** means an Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim.

**"Professional Persons"** means persons retained in the Chapter 11 Case prior to the Confirmation Date by Final Order of the Bankruptcy Court pursuant to §§ 327, 333 or 1103 of the Bankruptcy Code, including Jordan Schrader Ramis, PC , WEL Group, Inc. and the Office of the Long-Term Care Ombudsman for the State of Oregon.

**"Property"** means the commercial real property owned by the Debtors at the street address 910 Boone Road, Salem, Oregon, as more particularly described in the Ziegler Mortgage.

**"Sale"** means the sale of the Sale Assets to be carried out pursuant to the terms of Article VII(c) of the Plan.

**"Sale Assets"** means all assets of the Debtor  except for Cash on hand on the Effective Date, the Key Equipment Collateral, and Causes of Action.

**"Sale Date"** means the date on which the Sale is consummated and sale proceeds are available for distribution to creditors.

**"Schedules"** means the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court in accordance with Section 521(a)(l) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

**"Secured Claim"** means every Claim or portion thereof that is asserted by the Creditor holding such Claim to be secured by a Lien encumbering property in which the Debtor has an interest to the extent of the value of the interest of the Creditor holding such Claims against such property of the Debtor.

**"Transfer Taxes"** means any and all transfer, stamp, sales or similar taxes that may be required to be paid in connection with the transactions contemplated by this Plan.

**"Unclaimed Property"** as at any date of determination means the Cash, exclusive of any interest earned thereon, held by or for the Reorganized Debtor that is unclaimed by a Creditor following a distribution made pursuant to the Plan (including property attributable to checks that have been returned as undeliverable without a proper forwarding address, checks that have not been cashed and checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property).

**"Unsecured Claim"** means any Claim that is not an Administrative Expense Claim, Priority Claim, Priority Tax Claim, Secured Claim or Interest.

**"Unsecured Creditor"** means the holder of an Unsecured Claim.

**"Ziegler"** means collectively, Ziegler Healthcare Fund I, L.P. and Ziegler Healthcare Fund III, LLC.

**"Ziegler Claim"** means, collectively, the Claims held by Ziegler, proof of which was filed in the Face Amount of $4,775,909.69 by Ziegler Healthcare Fund I, L.P. and in the Face Amount of $2,250,530.64 by Ziegler Healthcare Fund III, LLC and designated as Claims 14 and 15 on the Claims Register maintained by the Bankruptcy Court for the Chapter 11 Case. Without limitation, the Ziegler Claim shall include all attorney fees, costs, expenses and other

charges to which Ziegler is entitled under the parties' notes, loan agreements and the Ziegler Mortgage, except as may be limited by applicable bankruptcy law.

**"Ziegler Collateral"** means the property of the Debtor subject to Liens in favor of Ziegler pursuant to, among other things, the Ziegler Mortgage

**"Ziegler Mortgage"** means the Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated (i) September 9, 2005, given by Debtor to Ziegler Healthcare Fund I, encumbering, among other things, the Property as a first lien, and (ii) the second Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated September 9, 2005, given by Debtor to Ziegler encumbering the Property as a second lien.

## ARTICLE III
## INTERPRETATION. COMPUTATION OF TIME AND GOVERNING LAW

**3.1** **Defined Terms.** Any term used in this Plan that is not defined in this Plan, either in Article II (Definitions) or elsewhere, but that is used in the Bankruptcy Code or Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**3.2** **Rules of Interpretation.** For purposes of this Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular or plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to sections, articles or exhibits are references to sections, articles or exhibits of or to the Plan; (3) the words "herein", "hereof, "hereto" or "hereunder" and

others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (e) captions and headings to Articles or sections are inserted for convenience or reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

**3.3** __Time Periods.__  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**3.4** __Governing Law.__ Except to the extent that the Bankruptcy Code or Bankruptcy Rules, or other federal statutory or common law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Oregon, without giving effect to its conflicts of law provisions or choice of law rules.

**ARTICLE IV**
**UNCLASSIFIED CLAIMS**

**4.1.1** __Administrative Expense Claims__.  Administrative Expense Claims are not classified under this Plan in accordance with Section 1123(a)(1) of the Bankruptcy Code.

A.  __If the New Loan closes by the Closing Deadline.__  Administrative claims shall be paid in full at Closing of the New Loan.

B.  __If the New Loan does not close by the Closing Deadline.__  If the Closing does not occur by the Closing Deadline, then Administrative Claims shall be paid in full on the later of (i) the Distribution Date, and (ii) the date upon which the Court enters a Final Order allowing such Administrative Expense Claim or as soon thereafter as is practicable.

C.  __Unless Otherwise Agreed.__  In any case, payment may be made upon such less favorable terms as may be agreed between any holder of such Administrative Expense Claim (both in terms of timing and amount of such Administrative Expense Claim) and

the Reorganized Debtor or Plan Administrator (if one has been appointed).

4.2    **Requests for Payment.**    Requests for payment of all Administrative Expense Claims ("Requests for Payment"), including (i) Claims for professional fees and all fee applications of Professional Persons and (ii) claims, if any, arising under Section 503(b)(9) of the Bankruptcy Code, shall be filed with the Bankruptcy Court and served on Debtor, Ziegler and their counsel no later than twenty (20) days from the Confirmation Date. Holders of Administrative Expense Claims for goods and services provided to the Debtor after the Petition Date in the ordinary course of the Debtor's business shall not be required to file Requests for Payment. Holders of Administrative Expense Claims that are subject to the foregoing requirement for filing Requests for Payment and that do not timely file Requests for Payment shall be forever barred from asserting their Administrative Expense Claims against the Debtor, its estate and any property of the Debtor transferred pursuant to this Plan. Any party in interest shall have the right to object to any requests for payment of Administrative Expense Claims.

<u>**ARTICLE V**</u>
<u>**CLASSIFICATION OF CLAIMS AND INTERESTS**</u>

5.1    **Classes of Claims.**    The Classes of Claims and Interests under the Plan consist of Allowed Claims designated and classified as follows:

5.1.1    <u>Class 1</u>:  Priority Claims.

5.1.2    <u>Class 2</u>:  Ziegler Secured Claim.

5.1.3    <u>Class 3</u>:  Key Equipment Finance Secured Claim.

5.1.4    <u>Class 4</u>:  General Unsecured Claims.  All allowed unsecured claims not otherwise classified.

5.1.5    <u>Class 5</u>:  Excelsior Claims.  Class 5(a) consists of the principal portion of the secured claim of Excelsior Development Company, LLC, the Debtor's general partner ("Excelsior").  Class 5(b) consists of the accrued interest on the 5(a) amount owed Excelsior.

**5.1.6**  Class 6:  Subordinated Unsecured Claims.   All allowed unsecured claims of Farmington Center, Inc., Jim Oberholtzer and Paul Williams.

**5.1.7**  Class 7:  Property Tax Claims.  Real and personal property taxes owed to Marion County.  Class 9 taxes are paid currently.

**5.1.8**  Class 8:  Equity Interests.  All equity interests in the Debtor outstanding as of the effective date.

## ARTICLE VI
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**6.1**    **Treatment.**   The Classes of Claims and Equity Interests shall receive the treatment described herein, which treatment shall be in full and complete satisfaction, settlement and release of, and in exchange for, all such Claims and Equity Interests. Following entry of the Confirmation Order (but subject to the occurrence of the Effective Date), the rights of all Creditors and holders of Equity Interests shall be limited exclusively to the specific benefits made available and set forth in the Plan.

**6.1.1**  Class 1:  Class 1 consists of Priority Claims.  As of the date of filing of this Plan, no Priority Claims have been filed and none were listed on the Debtor's Schedules.

A.  If the New Loan closes by the Closing Deadline.  The Class 1 claims (if any) shall be paid in full at Closing of the New Loan.

B.  If the New Loan does not close by the Closing Deadline.  If the Closing does not occur by the Closing Deadline, then the Class 1 Claims (if any) shall be paid in full on the later of (i) the Distribution Date, and (ii) the date on which such Priority Claim is Allowed, or as soon thereafter as is practicable.  The holder of an Allowed Priority Claim for taxes shall not be entitled to receive any payment on account of interest, or on account of any penalty arising with respect to or in connection with its Claim, except to the extent allowed pursuant to Section 507(a)(8) of the Bankruptcy Code.  Class 1 is not impaired under the Plan and holders of Priority Claims are not entitled to vote on the Plan.

**6.1.2** <u>Class 2</u>:   Class 2 consists of the Ziegler Secured Claim.   Class 2 is impaired.

A.    <u>If the New Loan closes by the Closing Deadline.</u>  The Class 2 claim shall be paid in full at Closing of the New Loan.

B.    <u>If the New Loan does not close by the Closing Deadline.</u>  If the Closing does not occur by the Closing Deadline, then the Class 2 claims shall be paid from the Sale proceeds.  Ziegler or its designee may credit bid at the Auction for the Sale Assets.  In the event Ziegler's Credit Bid is not the Prevailing Bid for the Sale Assets at the Auction, Ziegler's Allowed Secured Claim shall be paid in full from the proceeds of the Auction of the Sale Assets on the Sale Date or as soon as is practicable thereafter and prior to the payment of any other Claims against the Debtor or its estate.

C.  Pending payment in full, and except as modified by the Plan, Ziegler will retain all of its liens and encumbrances (including the Ziegler Mortgage) securing the Ziegler Claim and the terms and provisions of the loan documents, including but not limited to financial reporting and inspections, shall remain in full force and effect.

**6.1.3** <u>Class 3:</u> Class 3 consists of the Key Equipment Secured Claim.  Class 3 is impaired under the Plan.

A.    <u>If the New Loan closes by the Closing Deadline.</u> The Key Equipment lease shall be assumed by the Debtor and paid in accordance with its terms.

B.    <u>If the New Loan does not close by the Closing Deadline.</u>  If the Closing does not occur by the Closing Deadline, then,  following the Auction, if the Prevailing Bidder so elects, the Key Equipment lease shall be assumed by the Debtor effective on the Sale Date, assigned to auction purchaser, and paid in accordance with its terms.  If the Prevailing Bidder does not elect to assume the lease, then the Key Equipment lease shall be deemed

rejected and the Key Equipment Collateral shall thereafter be returned to Key Equipment in full satisfaction of its Secured Claim.

**6.1.4**  Class 4:  Class 4 consists of General Unsecured Claims not otherwise classified.  Class 4 is impaired under the Plan.

A.  If the New Loan closes by the Closing Deadline.  The Class 4 claims shall be paid in full at Closing of the New Loan.

B.  If the New Loan does not close by the Closing Deadline.  If the Closing does not occur by the Closing Deadline, then (following the Auction) holders of Class 4 Unsecured Claims shall receive a *pro rata* distribution of any Cash remaining in the Distribution Fund after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims.  If there is no Cash remaining in the Distribution Fund after the payment of Allowed Administrative Expense Claims and Allowed Priority Claims, holders of Allowed General Unsecured Claims shall not receive or retain any property on account of their Claims. Class 4 is impaired under the Plan.

**6.1.5**  Class 5:  Class 5 consists of the Excelsior Claim.  Class 5 is impaired.

A.  If the New Loan closes by the Closing Deadline.  The Class 5(a) claim shall be paid in full at Closing of the New Loan, to the extent of available loan proceeds after payment of Classes 1 and 2.  The Class 5(b) claim shall not receive any payments at Closing but shall be paid as the reorganized Debtor determines it is able to pay. The claim will continue to be secured by the collateral securing the claim, which security shall be subordinated to the new lender's security interests.

B.  If the New Loan does not close by the Closing Deadline.  If the Closing does not occur by the Closing Deadline, then the Class 5(a) claim shall be paid to the extent of available proceeds of the Auction Sale, if any, remaining after payment of the Class  2 Claims,  and the Class 5(b) claims shall be paid to the extent of available proceeds of the

Auction Sale, if any, remaining after payment of allowed Administrative Expense Claims and the Class 1 – 4 and 5(a) Claims.  Class 5 is impaired under the Plan.

**6.1.6**  <u>Class 6:</u>  Class 6 consists of Subordinated Unsecured Claims.  Class 6 is impaired by the Plan.

A.    <u>If the New Loan closes by the Closing Deadline.</u>    The reorganized Debtor shall pay the holders of allowed Class 6 claims in cash as the reorganized Debtor determines it is able to pay.

B.    <u>If the New Loan does not close by the Closing Deadline.</u>  If the Closing does not occur by the Closing Deadline, then the holders of Class 6 Claims shall receive a *pro rata* distribution of any Cash remaining in the Distribution Fund after payment of all Administrative Expenses and other Allowed Claims.  If there is no Cash remaining in the Distribution Fund after the payment of all Administrative Expenses and other Allowed Claims, holders of Allowed Insider Unsecured Claims shall not receive or retain any property on account of their Claims.

**6.1.7**  <u>Class 7:</u>    Class 7 consists of Property Tax Claims.   Class 7 is not impaired and is not entitled to vote on the Plan.  Class 7 taxes are current or will be paid to each holder of the allowed Class 7 claim in cash from the "restricted DIP account," as that term is defined in the Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection, on the Effective Date or as soon thereafter an amount is determined.

**6.1.8**  <u>Class 8:</u>  Class 8 consists of the Interests.  Class 8 is impaired.  For purposes of the Plan, each holder of a partnership interest is entitled to vote on the Plan.

A.    <u>If the New Loan closes by the Closing Deadline.</u>  All equity interests shall retain their interest unaltered by the Plan, but shall receive no payments on confirmation or from the closing of the New Loan.

B.    <u>If the New Loan does not close by the Closing Deadline.</u>  If the

Closing does not occur by the Closing Deadline, then any Cash remaining in the Distribution Fund after payment in full of all Administrative Expenses and Allowed Claims shall be paid by the Plan Administrator to the Debtor for distribution to holders of Interests.  Class 10 is impaired under the Plan. If there is no Cash remaining in the Distribution Fund after the payment of all Administrative Expenses and Allowed Claims, holders of Interests shall not receive or retain any property on account of their Interests.

### ARTICLE VII
### MEANS FOR EXECUTION OF THE PLAN

**7.1**   **If the New Loan closes by the Closing Deadline:**

**7.1.1**   Debtor will close the New Loan.

**7.1.2**   The reorganized Debtor shall execute and deliver documents instruments and agreements necessary to implement this Plan.

**7.1.3**   Reorganized Debtor will pay Claims as provided in Article VI above.

**7.2**   **If the New Loan does not close by the Closing Deadline:**

**7.2.1**   Interim Operator.   On the first business day following the Closing Deadline when the Interim Operator is licensed to do so under state law, the Interim Operator shall assume control over the Facility and shall be authorized to operate the Debtor's business pending the Auction and to spend funds of the Debtor and the Estate for this purpose.  The Interim Operator shall be entitled to compensation at the rate of $20,000 per month and the fees and expenses incurred by the Interim Operator through the Sale Date shall be paid on a monthly basis from assets and earnings of the Debtor.

**7.2.2**   Plan Administrator and Auction. The Plan Administrator shall assume his duties under the Plan.  The Plan Administrator shall be entitled to compensation at $175 per hour and may hire legal counsel to assist him in his duties.  The fees and expenses of the Plan Administrator shall be paid on a monthly basis from assets and earnings of the Debtor. The Plan Administrator shall cause the Sale Assets to be sold at a public auction (the

"Auction") on a date to be determined by the Plan Administrator during December 1 - 4, 2009. The Auction will be conducted in accordance with the provisions of the following Section 7.2.3 of this Plan.

**7.2.3**   The Auction shall be conducted in the following manner:

A.     Plan Administrator, with input from the reorganized Debtor and Ziegler, shall market the Sale Assets following his appointment, pending the Auction.

B.     Ziegler shall be deemed to have submitted a credit bid (the "Ziegler Credit Bid") for the Sale Assets in the full amount of the Ziegler's Allowed Claim. If the Ziegler claim has not been allowed by Final Order at the time of the Auction then, in Ziegler's discretion, Ziegler may credit bid the undisputed portion of its claim (which was $4,592,186.82 on the Ziegler I loan and $1,672,991.09 on the Ziegler III loan as of June 30, 2009, plus attorney fees in the sum of $250,000) or may postpone the auction until the entry of such Final Order allowing the Ziegler Claim.

C.     At least 20 days prior to the auction, Ziegler and the Plan Administrator (on behalf of the Reorganized Debtor) shall enter into a definitive agreement (the "Asset Purchase Agreement" for purchase and sale of the Sale Assts.

D.     Initial Overbids.   Any third party (other than Ziegler) that is interested in being a participant in the Auction (each an "Overbidder"), must submit an "Initial Overbid" as provided herein prior to 3:00 p.m. Pacific time ten days prior to the Auction date (the "Bid Deadline").   Any such Initial Overbid must:

i)     Contain a signed definitive asset purchase agreement in substantially the form of this Asset Purchase Agreement (marked to show changes from this Asset Purchase Agreement) with, at a minimum, the following requirements: (1) designating the Sale Assets to be acquired and having similar terms and conditions as the Asset Purchase Agreement; (2) provide for a purchase price with respect to the Sale Assets equal to or greater than the sum of (i) the Ziegler Credit Bid and (ii) $50,000.00 (collectively, the "Initial Overbid Amount"); (3) provide that the buyer thereunder will forfeit the Sale Deposit (defined below), in the amount as described below, as liquidated damages if such buer defaults under such purchase agreement; (4) not be subject to any (i) financing contingency, (ii) contingency relating to the completion of unperformed due diligence, (iii) contingency relating to the approval of the Overbidder's board of directors or other internal approvals or consents, or (iv) any conditions precedent to the Overbidder's obligation to purchase the Sale

Assets other than those included in the Asset Purchase Agreement; and (5) no Initial Overbid shall provide for the payment to the Overbidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement.  The Asset Purchase Agreement shall provide, among other things, that: (i) the closing of the sale will occur, subject to confirmation of the sale by the Bankruptcy Court, on, or no later than, fifteen (15) days after entry of a Final Order approving the sale; and (ii) time is of the essence with respect to the Closing.

        ii)        Include a deposit (the "<u>Sale Deposit</u>") in the form of a certified check in the amount of ten percent (10%) of the Overbidder's proposed purchase price payable to the order of Debtor and such deposit shall be held by the Plan Administrator in escrow in a segregated account pending the closing of the Asset sale;

        iii)        To the extent not previously provided to Debtor, include an executed confidentiality agreement (in form and substance reasonably satisfactory to the Plan Administrator);

        iv)        To the extent not previously provided to Debtor, be accompanied by evidence satisfactory to the Plan Administrator in his commercially reasonable discretion that the Overbidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under its purchase agreement in the event that it submits the Prevailing Bid (as hereinafter defined) at the Auction; and

        v)        Be submitted to Debtor, the Plan Administrator, Ziegler and their counsel in each case so as to be received not later than the Bid Deadline.

        E.        <u>Auction</u>.  In the event that the Plan Administrator determines, in his <u>reasonable</u> discretion, that he has received a qualifying Initial Overbid from a prospective buyer (a "<u>Qualified Bidder</u>"), then the Plan Administrator will conduct an auction (the "<u>Auction</u>") with respect to the sale of the assets at the offices of the Plan Administrator on a date and time he sets in the period from December 1 to December 4, 2009.  Ziegler shall be deemed to be a Qualified Bidder without further qualification.  the Plan Administrator will provide no less than 48 hours' notice to Ziegler and all Qualified Bidders that the Auction will be held.  No Qualified Bidder may propose to purchase different groups of assets on varying contract terms except bids for substantially all of the Sale Assets.  All bids must be for cash or cash equivalents.  After consultation with counsel for the Committee, the Plan Administrator shall determine the highest and best offer.  The "<u>Prevailing Bidder</u>" shall be the party (including Ziegler) that submits the highest and best bid at the Auction.  No bids may be received after the announced conclusion of the Auction. At the Auction, Qualified Bidders and Ziegler may submit successive bids in increments of

at least $25,000.00 greater than the prior bid (the "<u>Incremental Bid Amount</u>") for the purchase of all or substantially all of the Assets until there is only one offer that the Plan Administrator determines, in consultation with Ziegler and the Debtor, and subject to Bankruptcy Court approval, is the highest and best offer (the "<u>Prevailing Bid</u>"). If no conforming Initial Overbid shall have been received at or prior to the Bid Deadline, no Auction will be held and the Bankruptcy Court hearing held in the Bankruptcy Case to approve the highest and best bid for the Assets (the "<u>Sale Approval Hearing</u>") will proceed with respect to the Asset Purchase Agreement with Ziegler. The bidder submitting the Prevailing Bid is defined as the "<u>Prevailing Bidder.</u>" The Plan Administrator may impose such other terms and conditions as he may determine to be in the best interest of Debtor's estate, its creditors and other parties in interest; provided such terms and conditions shall not be inconsistent with the terms of the Asset Purchase Agreement unless otherwise agreed to by Ziegler.

      F. Following the Auction, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") on an expedited basis to confirm the sale of the Sale Assets to the Prevailing Bidder. At the Sale Hearing, the Bankruptcy Court will adjudicate any disputes regarding the determination of the highest and best bid for the Sale Assets.

      G. The sale of the Sale Assets shall be free and clear of all liens, claims, encumbrances, equities and interests, of any nature or kind, and shall: (i) be exempt under any law imposing a stamp or similar tax pursuant to § 1146 of the Bankruptcy Code; and (ii) constitute a sale under §§ 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Bankruptcy Code. All liens and encumbrances upon the Sale Assets shall remain in effect until the closing of the Sale, and at closing shall be transferred and attached to the proceeds of the Sale in the same extent and priority that existed immediately before the closing. The Prevailing Bidder at the Auction shall be entitled to a rebuttable presumption it is a good faith purchaser

for value and, shall be entitled to the protections of § 363(m) of the Bankruptcy Code.

> H.    If the Prevailing Bidder materially defaults under the Sales Contract, the Plan Administrator shall contact the party with the next highest bid and enter into a sales contract for the amount of such bid; provided, however, that the Plan Administrator may, in its discretion after consultation with Ziegler, extend, for up to 15 additional days, the time within which the closing must occur if the Prevailing Bidder's inability to close is on account of the need to obtain regulatory approval and such regulatory approval is being diligently pursued by the Prevailing Bidder.  The Sale contract with the second highest bidder(s) shall comply with Article VII of the Plan.

> I.    The Plan Administrator shall have the authority to execute on behalf of the Debtor all documents and instruments which are necessary for the closing of the Sale of the Sale Assets including, without limitation, deeds to the Properties, and transfer tax returns and questionnaires, and such other and further documents and instruments as are necessary to effectuate the Auction Sale contemplated under the Plan.

> **7.2.4**   Upon the closing of the Sale on the Sale Date, the sale proceeds shall be distributed by the Plan Administrator: *first*, in payment of any reasonable and necessary costs of sale (as determined by the Plan Administrator, in consultation with Ziegler); *second* in payment of the Ziegler Allowed Secured Claim; and *third* to the Plan Administrator to be deposited in the Distribution Fund.

> **7.2.5**   On the Sale Date, all Excluded Assets and any remaining proceeds from the Auction Sale after the payments  described in Article VII.(B)(4) above shall be deemed vested in the Plan Administrator.

> **7.2.6**   On the Sale Date, the Plan Administrator shall establish the Distribution Fund and transfer to the Distribution Fund (i) all remaining Cash of the Debtor

and (ii) any sale proceeds remaining after the payments described in Article VII.(B)(4) above.

**7.2.7**   To the extent the amount of the Distribution Fund on the Sale Date is less than the aggregate amount of Allowed Administrative Expense Claims and Allowed Priority Claims, Ziegler shall pay the shortfall, not to exceed $100,000, to the Plan Administrator and such payment shall be deposited by the Plan Administrator in the Distribution Fund.

**7.2.8**   The reasonable fees and expenses of the Plan Administrator and the Interim Operator shall be paid monthly from the Distribution Fund, subject to ten (10) days' prior notice, with an opportunity to object, to Ziegler and the Debtor. In the event of a dispute between the Plan Administrator and Ziegler or Debtor over the appropriate amount of fees to be paid to the Plan Administrator, either party may seek a determination from the Bankruptcy Court as to the amount of the fees to be paid.

**7.2.9**   Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor. The Debtor may dissolve after the occurrence of the Sale Date if it so desires. Neither Ziegler nor the Plan Administrator shall be responsible for (i) maintaining the corporate existence of the Debtor or (ii) dissolving or otherwise terminating the existence of the Debtor after the Sale Date.

## ARTICLE VIII
## CONTROVERSY WITH RESPECT TO IMPAIRMENT

In the event of a controversy as to whether a Class of Claims or Interests is impaired, the Court shall, after notice and a hearing, determine such controversy.

## ARTICLE IX
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**9.1**   **Conditions to Effective Date.** The following conditions must occur and be satisfied for the Plan to become effective and the Effective Date to occur:

**9.1.1**  The Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor and Ziegler, which shall, among other things, (i) find that the Plan complies with all applicable requirements of the Bankruptcy Code, (ii) decree that the Confirmation Order shall supersede any Court orders issued prior to the Confirmation Date that may be inconsistent therewith, (iii) decree that, except as otherwise provided in the Plan or in the Confirmation Order, all transfers of property contemplated under this Plan shall be free and clear of all Claims, security interests, liens, encumbrances and other interests of holders of Claims and Interests, and (iv) provide that any and all executory contracts and unexpired leases that are assumed pursuant to the Plan shall remain in full force and effect for the benefit of the Reorganized Debtor or purchaser at the Sale, as the case may be, notwithstanding any provision in any such contract or lease or in applicable law (including those described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or that enables or requires termination or modification of such contract or lease.

**9.1.2**  No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 9.1 are satisfied or waived.

**9.1.3**  All documents, instruments and agreements, each in form and substance satisfactory to the Debtor, provided for under or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the party to be benefited thereby.

**9.2**  **Waiver of Conditions.**  The Debtor and Ziegler may waive any of the conditions to the effectiveness of this Plan set forth in Section 9.1 of this Plan.

**9.3**  **Notice of Effective Date.**  On the first business day after the Confirmation Date on which all conditions to effectiveness of this Plan are satisfied or waived as provided in this Section 9, or as soon thereafter as is reasonably practicable, the Debtor

shall file with the Court a notice that states the Effective Date.  The Plan shall be deemed to be effective as of 12:01 a.m. (prevailing Pacific Time) on the Effective Date set forth in such notice filed with the Court. If the Effective Date does not occur within thirty (30) days of the Confirmation Date, any party in interest may file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Facility, the Debtor's assets and the Chapter 11 case.  The Debtor reserves the right to request that the Confirmation Order include (i) a finding by the Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order, and (ii) the Court's authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

## ARTICLE X
## PROVISIONS REGARDING DISTRIBUTIONS

**10.1    Time of Distributions Under the Plan.**  Except as otherwise provided for herein or ordered by the Court, distributions under the Plan shall be made on the Closing Date if the New Loan is timely closed; and if there is an Auction, then payments and Distributions to be made by the Plan Administrator on the Sale Date shall be made on that date, or, in each case, as soon thereafter as is practicable.

**10.2    Payment Dates.**  Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the next Business Day.

**10.3    Manner of Payments Under the Plan.**  Payments made pursuant to the Plan shall be made in Cash by check drawn on a domestic bank or by wire transfer from a domestic bank. If the payee requests that distributions be made by electronic funds transfer, the payee shall be responsible for payment of the wire transfer fees.

**10.4    Withholding and Reporting Requirements.**  In connection with the Plan, the Reorganized Debtor and the Interim Operator, if any, shall comply with all applicable

withholding and reporting requirements imposed by any federal, state or local taxing authority. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions made under the Plan. All entities holding Claims shall be required to provide any information necessary to effect the withholding or reporting of such taxes. The Reorganized Debtor may condition any distribution to a Creditor upon receipt of any such information.

10.5 **Disputed Distributions.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution under the Plan, the Reorganized Debtor or Plan Administrator, as the case may be, may, in lieu of making such distribution to such entity, make such distribution into a reserve fund until the disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute.

10.6 **Unclaimed Distributions.** In the event that any Distribution under the Plan remains unclaimed for a period of three months after such Distribution has been made (or after such delivery has been attempted) in accordance with the Plan to a holder entitled thereto, such Unclaimed Distribution shall be deemed forfeited by such holder, whereupon all right, title and interest in and to such Unclaimed Distribution will immediately and irrevocably re-vest with the reorganized debtor or Plan Administrator, as the case may be, who will thereafter be empowered to take whatever steps may be reasonably necessary to exercise control over the Unclaimed Distribution.

10.7 **Time Bar to Cashing Distribution Checks.** The Reorganized Debtor or Plan Administrator may (but shall not be obligated to) stop payment on any check issued by it in respect of Allowed Claims if such check is not negotiated within sixty (60) days after the date of issuance thereof. Request for reissuance of any check shall be made to the Reorganized Debtor or Plan Administrator in accordance with this Plan, by the holder of

the Allowed Claim to whom such check originally was issued, prior to the expiration of the 180 day period set forth in Section 5.7 of the Plan.  After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such Claim.

**10.8  Transmittal of Distributions and Notices.** Any property or notices, including distributions, that an entity is or becomes entitled to receive pursuant to the Plan, may be delivered by regular mail, postage prepaid, in an envelope addressed to that entity at the address indicated on a properly filed proof of claim or, absent such a proof of claim, the address that is listed on the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009; provided, however, that a holder of a Claim may designate a different address for notices and distributions by notifying the Reorganized Debtor and Plan Administrator (if appointed) of a change of address in writing.  The new address shall be effective upon receipt of such notice.

## ARTICLE XI
## PROVISIONS CONCERNING PROPERTY

Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to sections 1123(a)(5) and 1141 of the Bankruptcy Code, all property of the Estate shall vest in the Reorganized Debtor, in each case, free and clear of all Claims, liens, charges, encumbrances and other interests of Creditors and Interest Holders. Pending the Closing Deadline, the Reorganized Debtor shall operate its business in the ordinary course of business, and shall not incur any indebtedness or dispose of any assets except in the ordinary course of business.  If the New Loan closes, then the Reorganized Debtor may use and dispose and otherwise deal with such property and may conduct its affairs, in each case, without supervision of the Court and free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules other than those restrictions expressly

imposed by the Plan or the Confirmation Order. All assets of the Debtor and its estate shall remain vested in the Debtor until the Sale Date (if any), and subject to all Liens, Claims and Interests except as otherwise provided in the Plan. If the New Loan does not close by the Closing Deadline then, (a) on the Sale Date, the Sale Assets shall be conveyed to the Prevailing Bidder(s) and (b) all Excluded Assets shall be transferred to the Plan Administrator free and clear of all Liens, Claims and Interests for administration in accordance with the Plan.

## ARTICLE XII
## OTHER EFFECTS OF PLAN CONFIRMATION

**12.1  Binding Effect.** On the Effective Date, pursuant to section 1141(a) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, all Creditors and all Interest Holders, including each of their respective heirs, legal representatives, successors and assigns, whether or not they accept the Plan.

**12.2  Discharge.** Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Debtor and the Reorganized Debtor shall be discharged from all liability on any and all Claims that arose before the Confirmation Date or that are of a kind specified in section 502(g), 502(h) or 502(j) of the Bankruptcy Code. This discharge shall be effective on the Effective Date as to each such Claim, whether or not (i) proof of the Claim is filed or deemed filed, (ii) the Claim is an Allowed Claim under this Plan, or (iii) the holder of the Claim votes to accept or reject this Plan.

**12.3  Release.** In consideration of Ziegler's acceptance of the treatment provided under the Plan and the conditional funding of the Plan by Ziegler, the Debtor, and the Debtor's estate (collectively the "Releasors" and each individually a "Releasor") hereby release, remise and forever discharge Ziegler and all of its respective officers, directors, employees and other agents, financial advisors, attorneys and accountants (each

hereinafter a "Released Party" and, collectively, the "Released Parties") from any and all manner of actions, causes of actions, suits, debts, accounts and claims which each Releasor ever had, now has or may have whether known or unknown, except to the extent of any obligations undertaken by such Released Party in connection with this Plan.  Upon payment in full from the New Loan or on delivery of title to the facility to Ziegler as winning bidder at the Auction, the Note and Trust Deed will be terminated and reconveyed and the state court action dismissed.

### ARTICLE XIII
### EXECUTORY CONTRACTS AND LEASES

**13.1**    **If the New Loan closes by the Closing Deadline:**

**13.1.1**    **General Assumption of Executory Contracts and Unexpired Leases.**  Except as otherwise provided in the Confirmation Order, effective as of the Closing, all executory contracts and unexpired leases of the Debtor not previously rejected by operation of law or by Court order and not the subject of a motion to reject filed prior to the Confirmation Date shall be deemed to be automatically assumed by the Reorganized Debtor. The Confirmation Order shall constitute a Court order approving such assumptions pursuant to the provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code.  Each contract or lease that is assumed pursuant to this Plan shall be deemed to include all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such contract or lease (but excluding any of the foregoing that is not in writing and that purportedly limits, restricts or impairs the Debtor's rights or benefits under the written documents that evidence such contract or lease).

**13.1.2  Cure of Assumed Contracts and Leases.**   Any monetary amounts that are in default under a contract or lease that is assumed pursuant to this Plan shall be satisfied by Cure.  In the event of a dispute regarding (i) the nature or the amount of any

Cure, (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under any such contract or lease, or (iii) any other matter pertaining to the assumption of such a contract or lease, Cure shall occur immediately following the entry of a Final Order resolving the dispute.  Cure costs shall be paid by the Reorganized Debtor.

### 13.2    **If the New Loan does not close by the Closing Deadline:**

**13.2.1**    If the Closing does not occur by the Closing Deadline, then as of the day following the Closing Deadline, the management agreement (the "Management Agreement") between the Debtor and Farmington Center, Inc shall be deemed rejected. The Confirmation Order shall be deemed an order under § 365(a) of the Bankruptcy Code rejecting the Management Agreement on said condition.  Any proofs of claim by Farmington Center, Inc. for damages alleged to have been suffered on account of the rejection of the Management Agreement shall be filed within thirty (30) days of the Closing Deadline.

**13.2.2**    At the Auction, the Prevailing Bidder for the Sale Assets may designate executory contracts and leases (the "Designated Contracts") of the Debtor for assignment to, and assumption by, the Prevailing Bidder.  Prior to the Sale Hearing, the Plan Administrator shall, on behalf of the Debtor, file a motion for authority to assume the Designated Contracts and assign them to the Prevailing Bidder.  The order confirming the Sale shall include provisions for the assumption and assignment of the Designated Contracts to the Prevailing Bidder. The Prevailing Bidder shall be responsible for the payment of any amounts necessary to cure existing defaults under the Designated Contracts.

**13.2.3**    Any executory contracts of the Debtor that are not Designated Contracts, other than the Management Agreement, shall be deemed rejected as of the Sale Date.  Proofs of claim for any damages alleged to have been suffered on account of the rejection of any contracts of the Debtor shall be filed within thirty (30) days of the Sale Date.

## ARTICLE XIV
## "CRAM DOWN"

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code if the requirements of all provisions of section 1129(a) of the Bankruptcy Code, except paragraph (a)(8) thereof, are met with regard to the Plan. In determining whether the requirements of section 1129(a)(8) of the Bankruptcy Code have been met, any Class or subclass of a Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class or subclass. If Ziegler's claim has not become an Allowed Claim as of the date fixed by the Court for filing acceptances or rejections of this Plan, it shall be temporarily allowed under Bankruptcy Rule 3018 for the above purposes in the sum conceded by Debtor (which was $4,592,186.82 on the Ziegler I loan and $1,672,991.09 on the Ziegler III loan as of June 30, 2009).

## ARTICLE XV
## GENERAL PROVISIONS AND RETENTION OF JURISDICTION

**15.1**  **Post-Confirmation Professional Fees.**  Fees for post-confirmation services rendered or expenses incurred shall be subject to Bankruptcy Court approval. Ziegler reserves the right to object to all Professional Persons' final fee applications.

**15.2**  **Retention of Jurisdiction by the Court.**  Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

**15.2.1**  To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

**15.2.2** To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Effective Date or commenced thereafter.

**15.2.3** To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

**15.2.4** To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

**15.2.5** To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, satisfaction, subordination, re-characterization or reclassification of Claims.

**15.2.6** To make orders allowing amendment of the schedules file in the Chapter 11 Case for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

**15.2.7** To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

**15.2.8** To hear and determine any and all motions to abandon property of the Debtor's Estate.

**15.2.9** To make such other orders or give such directions as permitted by Section 1142 of the Bankruptcy Code.

**15.2.10** To consider and order any modifications or amendments requested to the Plan.

**15.2.11** To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

**15.2.12**   To make all orders necessary or appropriate to carry out the provisions of the Plan.

**15.2.13**   To enforce all orders previously entered by the Bankruptcy Court.

**15.2.14**   To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

**15.3**   **Waivers.**   Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefited by the term to be waived.

**15.4**   **Setoffs, Recoupments and Defenses.**   Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, either of them may have with respect to any Claim (including, without limitation, rights under section 502(d) of the Bankruptcy Code). Except as otherwise provided in the Plan, in the Confirmation Order or in agreements previously approved by a Final Order, the Reorganized Debtor may, but will not be required to, set off against any Claim or any distributions with respect to such Claim any and all of the claims, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor, as applicable, may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim, the payment of any distribution hereunder or any other action or omission of the Debtor or the Reorganized Debtor, as applicable, nor any provision of the Plan, shall constitute a waiver or release by the Debtor or the Reorganized Debtor, as applicable, of any such claims, rights and Causes of Action that the Debtor or the Reorganized Debtor, as applicable, may possess against such holder.

**15.5**   **Cancellation of Documents Evidencing Unsecured Claims.** As of the Effective Date, any note, agreement, instrument or other document evidencing an

unsecured Claim other than a Claim in Class 6 (insiders) shall be deemed cancelled, null and void, except for the right, if any, to receive distributions under this Plan.

15.6    **Payment of United States Trustee Fees.**   Notwithstanding the entry of the Confirmation Order, the Reorganized Debtor and Plan Administrator, if one is appointed, shall (i) be responsible for timely payments of all fees incurred pursuant to 28 USC § 1930(a)(6), and (ii) provide to the United States trustee, on or before the 30th day following the close of each calendar quarter, a financial report of all disbursements made by or on behalf of the Reorganized Debtor (whether or not pursuant to this Plan) during the preceding calendar quarter, or portion thereof, that this Chapter 11 case remains open.

15.7    **Limitations on Filing or Amending Claims After the Confirmation Date.**   Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be amended by the holder of such Claim solely to decrease, but not to increase, the amount of such Claim.   Except as otherwise provided in the Plan and in the immediately preceding sentence, any proof of claim (whether filed to assert a new Claim or to amend a previously filed Claim) filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Reorganized Debtor.

15.8    **Notices.**   Any notice, demand, claim or communication under this Plan shall be in writing and shall be deemed to have been given upon receipt by or the personal delivery thereof of service by next day delivery service or upon the seventh day following mailing thereof, if sent by registered mail, return receipt requested, postage prepaid by next day delivery, to the respective address of the parties set forth below, or such other address as the party may specify by notice given as herein provided:

|  |  |
|---|---|
| If to the Reorganized Debtor: | Farmington Center Salem |
|  | c/o Farmington Center, Inc. |
|  | 4640 SW Macadam Ave, Suite 90 |
|  | Portland OR 97239 |

With copy to:                        Douglas P. Cushing
                                     Jordan Schrader Ramis PC
                                     Two Centerpointe Drive, 6th Flr
                                     Lake Oswego OR 97035


If to Ziegler to:                    Doug Korey
                                     Contemporary Healthcare Capital, LLC
                                     1040 Broad Street, Suite 3B
                                     Shrewsbury, NJ 07702

with copies to:                      Joseph M. VanLeuven
                                     DAVIS WRIGHT TREMAINE LLP
                                     1300 SW Fifth Ave, Ste 2300
                                     Portland, OR  97201-5630

**15.9**    __Severability.__ Should any provision in this Plan be determined to be
unenforceable following the Effective Date, such determination shall in no way limit or affect
the enforceability or operative effect of any or all other provisions of this Plan.


## ARTICLE XVI
## PROVISIONS CONCERNING CAUSES OF ACTION

Except as otherwise provided in the Plan or in the Confirmation Order or in any
instrument, release or other agreement entered into in connection with the Plan, in accordance
with section 1123(b)(3) of the Bankruptcy Code, any rights or Causes of Action under any
theory of law (including, without limitation, under the Bankruptcy Code) extant on the
Effective Date shall remain fully enforceable.  On the Effective Date, Avoidance Actions and
all other Causes of Action shall become the property of the Reorganized Debtor.   These
Causes of Action include, but are not limited to, those described in more detail in the
disclosure statement relating to this Plan, and the failure of the Debtor to list a Cause of
Action in the disclosure statement shall not constitute a waiver or release by the Debtor of
such Cause of Action.  From and after the Effective Date, and until the Plan Administrator (if
any) is appointed, the Reorganized Debtor shall have the exclusive right and full authority to
enforce, sue on, settle, or compromise, or to decline to do any of the foregoing, any and all
Causes of Action (including, but not limited to, all Avoidance Actions and all other Causes of

Action of a trustee and Debtor in possession under the Bankruptcy Code or under applicable law). The Debtor expressly reserves all Avoidance Actions and other Causes of Action for later adjudication or other resolution by the Reorganized Debtor and, therefore, no preclusion doctrine (including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel or laches) shall apply to such Avoidance Actions or other Causes of Action upon or after the confirmation or consummation of the Plan. If there is an Auction, then, on the Sale Date, the Debtor shall be deemed to have transferred to the Plan Administrator all Causes of Action. The Plan Administrator may enforce such claims, rights or causes of action and any net recovery shall be retained by the Plan Administrator for distribution under the Plan.

## ARTICLE XVII
## MODIFICATION OF THIS PLAN

Debtor reserves the right to propose amendments to or modifications of this Plan under section 1127 of the Bankruptcy Code, at any time prior to the Confirmation Date. After the Confirmation Date, Debtor may modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code to remedy any defects or omissions or to reconcile any inconsistency in this Plan or in the Confirmation Order in such a manner as may be necessary to carry out the purposes and intent of this Plan so long as the rights of Claimants or Interest Holders are not materially modified or altered to their detriment without their express written consent.

## ARTICLE XVIII
## PROCEDURE FOR RESOLVING DISPUTED CLAIMS

**18.1    Prosecution of Objections to Claims.** Ziegler, Reorganized Debtor and the Plan Administrator may object to claims. Except as otherwise specifically provided in the Plan or in the Confirmation Order, all objections to Claims other than Administrative Expense Claims shall be filed by the Reorganized Debtor with the Court not later than thirty (30) days after the Effective Date unless such period is extended by Court order.

With respect to Claims arising pursuant to section 502(h) of the Bankruptcy Code which are filed after the entry of the Confirmation Order, objections to such Claims shall be filed by the Reorganized Debtor not later than thirty (30) days after proof of such Claim is filed, unless such period is extended by Court order.  If a Plan Administrator is appointed, he and Ziegler shall have an additional period of sixty (60) days from appointment to object to Claims.  The Reorganized Debtor, Ziegler, or Plan Administrator, as the case may be, are referred to in the following subsections of Section 18.1 hereof as the "Objector."

18.1.1  The Objector shall be responsible for reviewing the validity of scheduled and filed Claims and for objecting to Claims that, in the Objector's determination appear to be partially or wholly invalid.

18.1.2  Disputed Claims shall be divided into two portions:   the "Non-Disputed Portion" and the "Disputed Portion."   The Objector shall make Distributions on account of the Non-Disputed Portion of the Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

18.1.3  Notwithstanding any other provisions of this Plan, no payments or Distributions shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until all objections to such Disputed Claim are concluded and the Disputed Claim becomes and Allowed Claim.

18.1.4  The Objector will reserve and hold sufficient amounts in a reserve account (the "Disputed Claim Reserve") to make Distributions, in accordance with the provisions of the Plan, the Disputed Portion of each Disputed Claim as if such Disputed Claim was allowed in full.

18.1.5  Funds held in the Disputed Claim Reserve shall be invested in an interest bearing account.

**18.1.6** When a Disputed Claim is resolved, the Objector shall make Distributions to the holder of the Disputed Claim on that portion of the Disputed Claim Reserve equal to the difference between the amount then due of that Allowed Claim pursuant to the Plan less the amount previously paid to said Claimant on the Non- Disputed Portion of its Claim, plus interest actually earned on the amount to be distributed to such Claimant from the Disputed Claim Reserve.

**18.1.7** The Objector shall have the authority, but not the obligation, to settle Disputed Claims, including Disputed Claims to which an existing objection remains pending as of the Effective Date, without seeking additional authorization from the Bankruptcy Court.

Dated:  7/30/2009

Farmington Center Salem, an Oregon partnership
By:  Excelsior Development Co., LLC
Its:  General Partner

By    /s/ *Jeffrey L. Chamberlain*
Jeffrey L. Chamberlain, Member

ZIEGLER HEALTHCARE FUND I, L.P. AND
ZIEGLER HEALTHCARE FUND III, LLC

By:    /s/ *Douglas Korey*
Douglas Korey
Contemporary Healthcare Capital, LLC
1040 Broad Street, Suite 3B
Shrewsbury, NJ 07702

Presented by:

   /s/ *Douglas P. Cushing*
Douglas P. Cushing, OSB #700320
Jordan Schrader Ramis PC
Two Centerpointe Drive, 6th Floor
Lake Oswego OR  97035
Telephone:  (503) 598-7070
Facsimile:   (503) 598-7373
E-mail: doug.cushing@jordanschrader.com
Attorneys for Debtor