# United States Bankruptcy Court
# for the District of Oregon

Frank R. Alley, III, Judge
Barbara D. Ivey, Judicial Assistant
Lee D. Brice, Law Clerk



405 East Eighth Ave., Suite 2600
Eugene, Oregon 97401
(541) 431-4055
FAX: (541) 431-4048

September 25, 2009

Mr. Douglas P. Cushing
Two Centerpointe Dr., 6th Floor
Lake Oswego, OR 97035

Mr. Joseph M. VanLeuven
1300 SW 5th Ave., #2300
Portland, OR 97201

RE:     Case No. 09-60095-fra11     FARMINGTON CENTER SALEM
         Debtor's Objections to Claims Nos. 14 and 15

Gentlemen:

     Ziegler Healthcare Fund I, LP, and Ziegler Health Fund III, LLC, ("Ziegler") filed proofs of claims number 14 and 15, setting out the amounts Ziegler claims to be due on its loans to the debtor-in-possession. The debtor-in-possession has filed objections, based on the issues discussed below. The matter came on for hearing on August 27, 2009. I have reviewed the testimony, exhibits, and arguments of the parties. To summarize, I find that the objection should be sustained with respect to the application of the claimed default rate of interest, but otherwise overruled.

1. Exit Fee

     The loans are governed by loan agreements and promissory notes, which should be considered together. The terms that are pertinent to this discussion are identical.

     The loans were intended to yield a 15% turn to the lender. In order to accommodate the borrower's cash flow needs, the loans provided for a "coupon rate" which allowed for payments calculated at a lower interest rate. To make up the difference, the loans provided for an "exit fee," described in the loan agreement as follows:

> **2.6 Exit Fee:**. . . .(c) At the Maturity Date or upon prepayment or repayment of the Loan, which prepayments or repayments are outside of the regular principal and interest payments set forth in the Note, Borrower shall pay to Lender an Exit

Fee (the "**Exit Fee**") equal to an amount that provides Lender a fifteen percent (15%) IRR for the time during which the Loan is outstanding (inclusive of any Coupon Payments and Cash Flow Participation Payments received by the Lender).
(Ziegler, Exhibit 5, Page 16).

The promissory note describes the exit fee as follows:

> The parties intend that the payments to Holder [Ziegler] under this Note shall provide for aggregate interest payments over the term of the Loan which are intended to provide an internal rate of return to Holder of fifteen percent (15%) per annum, calculated on a monthly basis (the "**Required IRR**"). In furtherance of the foregoing, in order to determine whether the Required IRR has been obtained, Holder will, beginning with the date of the first disbursement pursuant to this Note, identify the disbursements and payments for each month and discount the cash flows back to the first disbursement date using a rate of fifteen percent (15%) per annum, calculated on a monthly basis. In the event that the result would yield an internal rate of return in excess of the Required IRR, Holder will refund an amount to Maker [Farmington] on the Maturity Date or payment in full of this Note together with any expenses, fees, premiums and other charges then owing to Holder pursuant to the Loan Documents. For purposes of calculating the internal rate of return, all fees (including, but not limited to, commitment fees, late payment charges, the Default Interest (as hereinafter defined) and prepayment fees and premiums) and all expense reimbursements, including amounts paid to or for the benefit of the Holder, shall be excluded.
>
> The monthly payments set forth above include (i) interest at the Coupon Rate, and (ii) a payment estimated to be sufficient to yield the Required IRR to Lender during the term of the Loan after the payment of the Cash Flow Participation Payments (as hereinafter defined). For purposes hereof, the Cash Flow Participation Payments shall be an amount equal to the Borrower's Cash Flow (as hereinafter defined) multiplied by the Applicable Percentage.
>
> In the event that on the Maturity Date or upon any prepayment of all or any part of this Note Maker has not paid Holder an aggregate amount to yield the Required IRR, Maker shall pay the difference between the aggregate amount paid and aggregate amount required to yield the Required IRR as an Exit Fee (the "**Exit Fee**").

The debtor's confirmed plan of reorganization provides that the Ziegler obligation will be paid in full from the proceeds of new financing. The parties do not, as I understand it, dispute the amounts paid to date, or the fact that no cash flow participation payments were made. However, they have, using different methods of calculation, come up with substantially different

amounts due under the exit fee provisions. The heart of their dispute is the different methodologies used to calculate the internal rate of return, and hence the exit fee.

In simple terms, Ziegler's approach presumes that each month's flow of cash from borrower to lender occurred on the same day of the month, as governed by the contract. Farmington's method applies each cash flow on the exact date it occurred. In order to determine the correct exit fee, the Court must decide which method more closely reflects the terms of the parties' agreement.

The greater weight of the evidence supports Ziegler's interpretation. The loan documents require that the internal rate of return be "calculated on a monthly basis." Moreover, sample documents provided by the lender with the loan agreement at the time the loan was closed demonstrated the calculation of the internal rate of return using the monthly basis.

Throughout this matter the parties have couched their disagreement in terms of two functions found in a commonly used spreadsheet, IRR and XIRR. The latter is a more sophisticated version, allowing for consideration of irregular payments. The former, employed by Ziegler, is not so flexible, and it calculates on the presumption that all payments are made at the same time each month. While the XIRR program may be more accurate, it is significant that it was not in use at the time the parties' agreement was entered into.

I find that the methodology employed by Ziegler, as reflected by the IRR function, is the method compelled by the parties' agreement.

2. Default Rate

The contract calls for an enhanced rate of interest in the event of a default. The parties dispute whether the original contract was in default. The dispute is mooted by the fact that the confirmed plan of reorganization provides for a cure of the default by payment in full of the loan. A default rate cannot be imposed where a plan of reorganization effects a cure. In re Entz-White Lumber & Supply, 850 F.2d 1338, 1342 (9th Cir. 1988).

The confirmed plan provides for an auction of the debtor's assets in the event that the proposed loan does not close, and the debt to Ziegler is not paid. In that event, the default rate may be applicable. For the present, the Court presumes that the loan will close as anticipated, and that the claim paid when the default is cured will be premised on the original, non-default rate of interest.

3. Interest Reserve

The loan agreement provides that $215,000 of the loan's proceeds be set aside in a "capitalized interest reserve" to be drawn on by the borrower to make note payments or to prepay a portion of the loan. The debtor asserts that the creation of the fund constitutes a prepayment of

interest. I disagree: the reserve is not available to the lender after the loan is disbursed, and the funds remain effectively in the borrower's possession until used to actually repay portions of the loan. The reserve should not be treated as if it was paid to Ziegler when the loan originated.

The foregoing constitutes the Court's findings of fact and conclusions of law. Counsel for Ziegler should prepare a form of order recalculating Ziegler's claim without application of any default rate. The claims will be allowed in the amount so calculated. In the event the default is not cured as contemplated by the confirmed plan, Ziegler may submit an amended proof of claim.

Very truly yours,

FRANK R. ALLEY
Bankruptcy Judge

FRA:bdi

cc: Office of the U.S. Trustee